UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

PARAMJIT BAINS,

        Plaintiff,

   v.

BLOCKBUSTER, INC., LISA MITCHELL, GALEN MANESS, TONY CHUNG, STEVE CERMAK, DOES 1-10, et al.,

        Defendants.

No. CIV. 08-2093 FCD DAD

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on plaintiff Paramjit Bains' ("Bains") motion to remand this action to the Superior Court of California for the County of Solano pursuant to 28 U.S.C. § 1446. Defendant Blockbuster Inc. ("Blockbuster") opposes the motion, arguing that there is complete diversity between plaintiff and defendant because the individual defendants were fraudulently joined. For the reasons set forth below,[1] plaintiff's motion to remand is GRANTED.

---

[1] Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. L. R. 78-230(h).

1

**BACKGROUND**

In 2000, plaintiff Bains was hired as a Store Manager at defendant Blockbuster, a video rental company. (Compl., filed Sept. 5, 2008, ¶ 11.) During his six years of employment with defendant, plaintiff received regional awards to acknowledge his performance, and each of his two performance evaluations were positive. (Id. ¶¶ 12-13.)

In or around 2005, defendant Tony Chung ("Chung") was hired as a Regional Director of Operations. (Id. ¶ 14.) Chung warned plaintiff and two other managers that if they ever failed to perform, they would be "looking for a new job." (Id.) In or around January 2006, defendant reassigned plaintiff to two stores, increasing plaintiff's workload. (Id. ¶ 15.) On or about April 17, 2006, defendant Lisa Mitchell ("Mitchell"), the area's District Leader, assigned new organization and display goals to the store and gave plaintiff an "action plan" designed to achieve these goals. (Id. ¶ 16.) Mitchell explained that she would be visiting the store every week to monitor the store's progress. (Id.) Plaintiff worked overtime to ensure that his store remained on schedule. (Id.)

On or about May 25, 2006, Mitchell visited plaintiff's store when he was not there and gave plaintiff's assistant manager a new action plan for the store. (Id. ¶ 17.) Plaintiff was later informed that the "new" action plan included a clause stating that if the action plan and certain other steps were not completed by July 1, 2006, plaintiff would be terminated. (Id.) Plaintiff was informed that all other stores in Mitchell's area had until the end of July to complete the same steps in the new

2

1  action plan.  (Id. ¶ 19.)  On or about June 19, 2006, plaintiff
2  and all other area managers received an e-mail from defendant
3  Steve Cermak, Regional Director of Operations, explaining that
4  all stores had until August 3, 2006 to complete the steps
5  required by the new action plan given to plaintiff.  (Id. ¶ 20.)
6  Mitchell informed plaintiff that this deadline "did not apply to"
7  his store.  (Id. ¶ 21.)

8      On or about June 20, 2006, Mitchell visited plaintiff's
9  store and reiterated to him that if the steps outlined in the
10 action plan were not completed by July 1, 2006, plaintiff would
11 be terminated.  (Id. ¶ 22.)  On or about June 22, 2006, plaintiff
12 made a phone call to the Blockbuster "Open Door Network," an
13 employee hotline on which callers are purportedly guaranteed
14 anonymity.  (Id. ¶ 23.)  Plaintiff made this phone call to report
15 the unfair treatment by defendant Mitchell.  (Id.)

16     On or about June 23, 2006, at approximately 7:00 p.m.,
17 Mitchell called plaintiff and told him that she knew about the
18 concerns he had reported on the "anonymous" employee hotline.
19 (Id. ¶ 24.)  She demanded that plaintiff withdraw his complaint.
20 (Id.)  Plaintiff refused, explaining that his concerns were
21 sincere and he had been acting within his rights as a Blockbuster
22 employee.  (Id.)  At approximately 9:00 p.m., Mitchell again
23 called plaintiff, demanding that he withdraw his complaint.
24 (Id. ¶ 25.)  She further demanded that he apologize for making
25 his complaint.  (Id.)  When plaintiff again refuse, Mitchell said
26 that she would be coming to plaintiff's store again.  (Id.)
27     On or about June 27, 2008, defendant Mitchell visited
28 plaintiff's store to talk about the action plan.  (Id. ¶ 27.)

1  Plaintiff explained that his store would be meeting the July 1
2  deadline and he had scheduled extra people that week to make sure
3  the deadline was met.  (Id.)  On or about June 28, 2006, at
4  approximately 9:00 a.m., Mitchell came to plaintiff's store and
5  terminated him.  (Id. ¶ 28.)

6  Plaintiff contends that he was terminated based upon his age
7  and seniority.  (Id. ¶ 30.)  Plaintiff alleges that Mitchell was
8  instructed to terminate multiple management-level employees based
9  on their age and seniority as part of a plan to eliminate
10 employees who had been with Blockbuster the longest.  (Id. ¶ 31.)

11 On July 28, 2008, plaintiff filed a complaint in the
12 Superior Court of California for the County of Solano, alleging
13 claims for (1) Age Discrimination in violation of the Fair
14 Employment and Housing Act ("FEHA") against defendant
15 Blockbuster; (2) Wrongful Termination in violation of Public
16 Policy against defendant Blockbuster; (3) Retaliation in
17 violation of FEHA against defendant Blockbuster; and (4)
18 Intentional Infliction of Emotional Distress against all
19 defendants.  Defendant removed the case to this court on
20 September 5, 2008, on the basis of diversity jurisdiction,
21 contending that the resident individual defendants were
22 fraudulently joined, and thus, there is complete diversity
23 between plaintiff Bains and defendant Blockbuster.

**STANDARD**

25 "[A]ny civil action brought in State court of which the
26 district courts of the United States have original jurisdiction,
27 may be removed by the defendant or the defendants, to the
28 district court" in which the action is pending.  28 U.S.C. §

4

1441(a). Federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between citizens of different states. 28 U.S.C. § 1332(a).

"If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent and the defendant's presence in the lawsuit is ignored for purposes of determining diversity." United Computer Sys., Inc. v. AT&T Corp., 298 F.3d 756, 761 (9th Cir. 2002) (internal quotations and citations omitted); McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987).  There is a general presumption against fraudulent joinder.  Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007). "Fraudulent joinder must be proven by clear and convincing evidence."  Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007).

**ANALYSIS**

Defendant Blockbuster argues that complete diversity exists because plaintiff Bains fraudulently joined the individual defendants and thus, their residency should be not be relevant to the determination of jurisdiction.  Specifically, defendant contends that plaintiff's intentional infliction of emotional distress ("IIED") claim obviously fails under California law because (1) plaintiff cannot establish "outrageous" conduct as a matter of law because the IIED claim is predicated upon personnel management activity; (2) the individual defendants were not plaintiff's employer and cannot be found derivatively liable for

5

his termination; and (3) the individual defendants are shielded from liability based on California's manager's privilege.

**A.   Outrageous Conduct**

Defendant argues that plaintiff fails to allege "outrageous conduct" by individual defendants, a necessary element of an IIED claim. Specifically, defendant contends that personnel management decisions do not rise to the level of outrageous conduct as a matter of law. Plaintiff maintains that he has a valid IIED claim and that the burden rests on defendant to prove that his claim has no possibility of success.

To succeed on a claim of intentional infliction of emotional distress, plaintiff must demonstrate:

> (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendants' outrageous conduct.

Christensen v. Superior Court, 54 Cal. 3d 868, 903 (1991). "Outrageous conduct" requires that the conduct must be so extreme "as to exceed all bounds of that usually tolerated in a civilized community." Id.

California courts have held that the question of whether the conduct alleged in the complaint is sufficiently "extreme and outrageous" is generally a factual issue for the jury. See Angie M. v. Superior Court, 37 Cal. App. 4th 1217, 1226 (1995). However, California courts have also held that "[a] simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." Janken v. GM Hughes

Electronics, 46 Cal. App. 4th 55, 80 (1996).  Personnel management actions include:

> [A]ctions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, [and] deciding who will be laid off.

Id. at 64-65.  "Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society."  Id. at 80.

Although defendant argues that plaintiff's IIED claim fails to allege "outrageous conduct," plaintiff alleges sufficient facts in the complaint to suggest that individual defendants engaged in actions outside of personnel management activity.  In his complaint, plaintiff alleges Mitchell telephoned him on two occasions demanding that he withdraw his complaint made to the "anonymous" employee hotline and apologize for making the complaint. (Compl. ¶¶ 24-25).  Viewing these allegations in the light most favorable to the plaintiff and because it is defendant's burden to demonstrate fraudulent joinder, the court cannot determine, as a matter of law, that Mitchell's actions constituted personnel management activities falling within the scope of her employment and supervisory duties.  See Briano v. Conseco Life Ins. Co., 126 F. Supp. 2d 1293, 1296 (C.D. Cal. 2000); Good v. Prudential Ins. Co. of America, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998) ("the defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in state court against the alleged sham defendant"); see also Janken, 46 Cal. App. 4th at 64-65.

Defendant has not established that plaintiff's failure to state a claim against individual resident defendants is *obvious* under the settled rules of California.  Thus, under the liberal notice pleading standards in federal court,[2] the court cannot conclude that plaintiff's IIED claim would be clearly foreclosed under California law on these grounds.

**B.    Derivative Liability**

Defendant argues that plaintiff cannot assert a derivative claim for IIED because he cannot maintain discrimination, retaliation, or wrongful termination claims against individual defendants who are not plaintiff's employer.  Plaintiff argues that individual defendants made deliberate choices in their treatment and interactions with plaintiff.  Plaintiff contends it is these individual actions or lack of actions upon which his IIED claim is based.

Only employers, not individual supervisors, may be held liable for discrimination, retaliation, and wrongful termination claims.  See Janken, 46 Cal. App. 4th at 80 ("only employers-and not individual supervisory employees-are at risk of liability for discrimination"); Jones v. The Lodge at Torrey Pines P'ship, 42 Cal. 4th 1158, 1160 (2008) (the employer, but not non-employer individuals, may be liable for retaliation); Phillips v. Gemini Moving Specialists, 63 Cal. App. 4th 563, 575 (1998) (the employer, not third parties, may be held liable for wrongful termination in violation of public policy).  However, defendant

---

[2]    The Federal Rules of Civil Procedure require that a pleading provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

1  has not shown that plaintiff's IIED claim is only predicated on
2  personnel activities that form the basis of his discrimination,
3  retaliation, or wrongful termination claims.  Rather, plaintiff
4  alleges conduct that may have occurred outside of Mitchell's
5  personnel and termination actions.  (See Compl. ¶¶ 24-25).
6  Defendant bears the burden of demonstrating fraudulent joinder
7  and must show that plaintiff's failure to state a cause of action
8  against a resident defendant is clearly *obvious*.  See United
9  Computer Sys., Inc., 298 F.3d at 761 (emphasis added).
10 Therefore, because it is not obvious that plaintiff's IIED claim
11 would be foreclosed as a matter of law and given that there is a
12 general presumption against fraudulent joinder, defendant's
13 argument based upon derivative liability fails.

14 **C.   Manager's Privilege**

15       Defendant argues that the personnel actions of individual
16 defendants are shielded from liability by the "manager's
17 privilege," which protects acts by managers against individual
18 liability.  However, plaintiff argues that the manager's
19 privilege does not bar claims for IIED.

20       The manager's privilege protects a manager's right to manage
21 personnel (including firing and hiring) without fear of
22 independent liability, unless such actions were for the benefit
23 of the individual.  Kacludis v. GTE Sprint Commc'ns. Corp., 806
24 F. Supp. 866, 872 (N.D. Cal. 1992).  For example, "in the context
25 of employer-employee relations, a manager is said to be
26 privileged to induce the breach of an employment contract between
27 his employer and another employee."  Los Angeles Airways, Inc. v.
28 Davis, 687 F.2d 321, 326 (9th Cir. 1982).  In this case,

1 plaintiff alleges that Mitchell engaged in actions outside the
2 potential scope of the manager's privilege, such as demanding
3 that plaintiff retract and apologize for the discrimination
4 complaint made to the anonymous employee hotline.  To the extent
5 that such actions were not motivated by personnel management
6 interests, Mitchell may not be shielded from potential liability
7 under the manager's privilege.  As a result, because plaintiff's
8 failure to state a cause of action against Mitchell is not
9 obviously foreclosed by the manager's privilege, defendant's
10 argument on this ground also fails.[3]

**D.    Attorneys' Fees**

Plaintiff argues that because defendant's removal was unreasonable, attorneys' fees and costs should be awarded to plaintiff.  Defendant argues that it had an objectively reasonable basis for seeking removal, therefore, plaintiff should not be awarded attorneys' fees and costs.  On granting a motion for remand, the court may order the defendant to pay plaintiff "its just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal."  28 U.S.C. § 1447(c); see Martin v. Franklin Capital Corp., 546 U.S. 132, 136 (2005).

In deciding whether an award is just, the test is whether the removing party had an "objectively reasonable basis for removal."  Martin, 546 U.S. at 136.  "Absent unusual circumstances, fees should not be awarded when the removing party

/////

---

[3] Because, as set forth supra, the court finds that at least one non-diverse individual defendant was not a sham defendant, the court does not reach the merits of defendant's argument with respect to the other individual defendants.

has an objectively reasonable basis for removal." Gardner v. UICI, 508 F.3d 559, 561 (9th Cir. 2007).

In the present case, defendant had an objectively reasonable basis for removal. Plaintiff is a citizen of California, while defendant Blockbuster is a citizen of Delaware and Texas. The non-diverse individual defendants are citizens of California; however, plaintiff only alleges IIED claims against these defendants. Defendant attempted to demonstrate that plaintiff, as a matter of law, could not sustain his IIED claims against any non-employers. Although defendant did not show plaintiff's failure to state a cause of action against individual defendants was *obvious* based on the allegations in plaintiff's complaint, defendant did have a reasonable basis for bringing the removal action. See Gardner, 508 F.3d at 562-63 (where the court could find an objectively reasonable basis for removal based on allegations in the plaintiff's complaint, award of attorneys' fees and costs was improper). Thus, plaintiff's motion as to this claim is DENIED.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to remand this action to the Superior Court of California for the County of Solano is GRANTED. Plaintiff's motion for an award of attorneys' fees and costs is DENIED.

IT IS SO ORDERED.

DATED: November 25, 2008.

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE